UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

UNITED STATES OF AMERICA,

Plaintiff,

v.

Case No.

APPROXIMATELY $18,046.00 IN UNITED
STATES CURRENCY,

Defendant.

## VERIFIED COMPLAINT FOR CIVIL FORFEITURE IN REM

The United States of America, by its attorney, Elizabeth M. Monfils, Assistant United States Attorney for the Eastern District of Wisconsin, alleges the following in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### Nature of the Action

1. This is a civil action to forfeit property to the United States of America, under 21 U.S.C. § 881(a)(6), for violations of 21 U.S.C. § 841(a)(1).

### The Defendant In Rem

2. The defendant property, approximately $18,046.00 in United States currency, was seized on or about February 10, 2026, from Jiiony Gardner at or near 1XXX North 21st Street, Milwaukee, Wisconsin.[1]

3. The defendant property is presently in the custody of the United States Marshal Service in Milwaukee, Wisconsin.

---

[1] Throughout this complaint, certain information has been redacted using the letter "X" as a means of avoiding the revelation of any personal information.

Case 2:26-cv-01126-SCD    Filed 06/24/26    Page 1 of 10    Document 1

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

6. Venue is proper in this district under 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for Forfeiture

7. The defendant property, approximately $18,046.00 in United States currency, is subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6) because it was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

## Facts

8. Heroin is a Schedule I controlled substance under 21 U.S.C. § 812.

9. Marijuana is a Schedule I controlled substance under 21 U.S.C. § 812.

10. Tetrahydrocannabinol ("THC") is a Schedule I controlled substance under 21 U.S.C. § 812.

11. Cocaine is a Schedule II controlled substance under 21 U.S.C. § 812.

12. Fentanyl is a Schedule II controlled substance under 21 U.S.C. § 812.

13. On or about April 12, 2017, Jiiony Gardner pleaded guilty in Milwaukee County Circuit Court, Case No. 17CF267, to, among other things, a felony count of possession of THC with intent to deliver.

2

14.     On or about July 14, 2021, Jiiony Gardner pleaded guilty in Milwaukee County Circuit Court, Case No. 21CF1042, to, among other things, the following felony counts: (1) three counts of delivery of Schedule I or II narcotics, (2) bail jumping, (3) possession of a firearm by a felon, and (4) possession of narcotic drugs.

15.     Since on or about April 12, 2017, Jiiony Gardner has been, and remains, a convicted felon.

16.     As a convicted felon, Jiiony Gardner is prohibited from possessing a firearm.

**Investigation**

17.     On January 11, 2026, an on-duty officer was in the area of a gas station that has large, posted signs stating that the property is being monitored by the Milwaukee Police Department and that no firearms are allowed on the property.

18.     The officer saw an individual, later identified as Jiiony Gardner, walk from Gardner's vehicle at a gas pump into the gas station's store. Jiiony Gardner appeared to have a heavy weighted object in his right jacket pocket, consistent with the mass of a firearm. While walking into the store, Jiiony Gardner's right hand remained in his right pocket but his left hand swung freely. Based on their training and experience, officers know that this behavior is consistent with a person concealing a firearm.

19.     Police databases showed that Jiiony Gardner was on active parole for felony narcotics offenses and he resided at 1XXX North 21st Street, Milwaukee, Wisconsin (the "Residence"). In addition, there was an active narcotics investigation into Jiiony Gardner that began in 2024. During that investigation, a confidential source identified Jiiony Gardner as a heroin dealer and stated that Jiiony Gardner was selling heroin while on probation.

20.     On January 14, 2026, an officer conducting surveillance at the Residence and saw Jiiony Gardner exit the front door carrying a large plastic garbage bag. In Gardner's right front

3

pants pocket was a heavily weighted object, similar to the object the officer saw him possess at the gas station on January 11, 2026. Jiiony Gardner entered his vehicle and drove away.

21.     On January 20, 2026, an officer collected abandoned garbage bags from the trash receptacle in the alley behind the Residence and found the following:

      A.     In one bag were multiple plastic baggies with cocaine residue and the corners missing, a designer mylar bag with marijuana residue, a shipping label addressed to Jiiony Gardner, and numerous pieces of mail addressed to Andrea Davis.

      B.     In another bag were numerous plastic baggies with cocaine residue and multiple pieces of mail addressed to Andrea Davis.

22.     On February 3, 2026, an officer collected an abandoned garbage bag from the trash receptacle in the alley behind the Residence and found numerous plastic bags with cocaine residue and the corners missing, a designer mylar bag with marijuana residue, and multiple receipts with the name Andrea Davis on them.

23.     On February 9, 2026, an officer collected two abandoned garbage bags from the trash receptacle in the alley behind the Residence and found in both bags multiple plastic baggies with cocaine residue, some of which had the corners missing. Officers also found a knotted plastic baggie with fentanyl residue, a designer mylar bag with marijuana residue, and receipts with the name Jiiony Gardner on them.

24.     Based on their training and experience, officers know that drug dealers often package their products by using the corners of plastic baggies to tie off small, knotted quantities called "corner cuts."

**February 10, 2026, execution of search warrant at Jiiony Gardner and Andrea Davis's residence**

25.     On February 10, 2026, at approximately 7:32 a.m., officers executed a search warrant at the residence of Jiiony Gardner and Andrea Davis located at 1XXX North 21st Street, Milwaukee, Wisconsin (the "Residence").

26. After knocking and announcing with no response, officers forced entry into the Residence.

27. Jiiony Gardner and Andrea Davis were located in the northeast bedroom of the Residence. Also inside the Residence were a 16-year-old female and an 11-month-old baby.

28. On February 10, 2026, the following items, among other things, were in the northeast bedroom of the Residence:

A. In the closet was a loaded semi-automatic handgun.

B. On the floor by the bed were the following:

   i. A flip phone.

   ii. A small metal safe. The door of the safe was ajar and the key to the safe was inside the lock. Inside the safe were a baggie containing approximately 19.38 grams of fentanyl and a credit card in the name of Jiiony Gardner.

C. Next to the safe, strewn around the floor and in a laundry basket, were numerous individually banded sums of money totaling approximately $18,046.00 in United States currency. Based on their training and experience, and the investigation to date, officers believe that the money had initially been inside the safe and someone quickly tried to remove it.[2]

D. On a table were the following:

   i. A baggie containing approximately 3.44 grams of marijuana.

   ii. A plastic container with fentanyl residue.

   iii. Jiiony Gardner's Wisconsin identification card, two Visa cards, and Department of Corrections paperwork.

   iv. A leather-bound notebook.

E. On a dresser were the following:

   i. A baggie containing approximately 0.47 grams of marijuana.

---

[2] Officers noted that when booking Jiiony Gardner at the police station, Gardner's right knuckles were freshly scraped. Inside the safe, above the door, is a metal lip which has a rigid edge. Gardner's scraped knuckles were consistent with hastily reaching inside the safe and pulling out the large sum of currency.

5

    ii.  A box of baggies.

    iii.  A functional electronic money counter.

  F.  Inside a dresser drawer was a box of ammunition.

  G.  Behind the dresser were the following:

    i.  A functional digital scale.

    ii.  Multiple baggies.

    iii.  A 3" x 5" notebook.

  H.  On the bed were two iPhones.

  I.  On the floor was a nonfunctional money counter.

29. On February 10, 2026, in the living room of the Residence was, among other things, a leather-bound notebook.

**The three notebooks located inside the Residence**

30. Based on their training and experience, and the investigation to date, officers believe that all three notebooks found in the Residence are drug ledgers—listing contact information for drug customers, prices for various types and quantities of drugs, and proceeds of drug trafficking.

31. One notebook (found on the table in the bedroom) included a page with a column heading labeled "Jan." with each day in January listed under that column (e.g., 1st, 2nd, 3rd, etc.), and a second column heading next to "Jan." labeled "Made" with dollar amounts listed under that column corresponding to each day in January.

  A.  The dollar amounts "Made" for January 1st through January 30th totaled approximately $27,805.

  B.  Listed under January 3, next to the amount "Made" of $840, was a notation stating, "& $800 front."

  C.  Based on their training and experience, officers know that when a drug dealer "fronts" drugs to an individual, the dealer gives drugs to that

individual and, in turn, expects that individual to sell the drugs and pay back the dealer from the sales proceeds. In this case, officers believe that Jiiony Gardner fronted $800's worth of drugs to an individual on January 3 and expected to receive $800 from that individual on a future date.

D.  Based on their training and experience, and the investigation to date, officers believe this page of the notebook shows that Jiiony Gardner made approximately $27,805 in drug proceeds during January.

32. A second notebook (found in the living room) contained prices for "F," "B," and "G." Based on their training and experience, officers know that "F" refers to fentanyl, "B" or "boy" refers to heroin, and "G" or "girl" refers to cocaine.

33. A third notebook (found behind the dresser in the bedroom) contained a list of names and phone numbers. Based on their training and experience, and the investigation to date, officers believe the names and phone numbers in this notebook are some of Jiiony Gardner's drug customers.

34. A drug detection canine gave a positive alert to the odor of a controlled substance on the approximately $18,046.00 in United States currency.

**February 10, 2026, recorded interview of Andrea Davis**

35. On February 10, 2026, an officer conducted an interview of Andrea Davis at the Residence during execution of the search warrant (the "Interview"). The Interview was recorded on the officer's body-worn camera.

36. During the Interview, when asked how much cash Jiiony Gardner had, Andrea Davis said she did not know. She stated that Jiiony Gardner gave her $100 yesterday to run some errands.

37. During the Interview, when asked if she knew how much money Jiiony Gardner had in the safe, Andrea Davis stated "No, I didn't have a key to it." Davis admitted that Jiiony Gardner kept the key to the safe with him.

<strong>Jiiony Gardner's State Criminal Drug Case</strong>

38. On February 13, 2026, Jiiony Gardner was charged in Milwaukee County Circuit Court, Case No. 26CF773, with possession of fentanyl with intent to deliver, maintaining a drug trafficking place, and felon in possession of a firearm.

<strong>Administrative Forfeiture Proceedings</strong>

39. The Drug Enforcement Administration ("DEA") began administrative forfeiture proceedings against the approximately $18,046.00 in United States currency on the ground that the seized currency was used or intended to be used in exchange for controlled substances or was proceeds of trafficking in controlled substances.

40. On or about March 28, 2026, Andrea Davis filed a claim with the DEA in the administrative forfeiture proceedings to the defendant approximately $18,046.00 in United States currency.

<strong>Warrant for Arrest In Rem</strong>

41. Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the defendant property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

<strong>Claims for Relief</strong>

42. The plaintiff alleges and incorporates by reference the paragraphs above.

43. By the foregoing and other acts, the defendant property, approximately $18,046.00 in United States currency, was used or intended to be used in exchange for controlled substances, represents proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841(a)(1).

44. The defendant approximately $18,046.00 in United States currency is therefore subject to forfeiture to the United States of America under 21 U.S.C. § 881(a)(6).

8

WHEREFORE, the United States of America prays that a warrant of arrest for the defendant property be issued; that due notice be given to all interested parties to appear and show cause why the forfeiture should not be decreed; that judgment declare the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and equitable, together with the costs and disbursements of this action.

Dated at Milwaukee, Wisconsin, this 24th day of June, 2026.

Respectfully submitted,

By: *s/Elizabeth M. Monfils*
ELIZABETH M. MONFILS
Assistant United States Attorney
Wisconsin Bar No. 1061622
Office of the United States Attorney
Eastern District of Wisconsin
517 E. Wisconsin Avenue, Room 530
Milwaukee, WI 53202
Telephone: (414) 297-1700
Fax: (414) 297-1738
E-Mail: elizabeth.monfils@usdoj.gov

9

**Verification**

I, Robert Gregory, hereby verify and declare under penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration (DEA) in Milwaukee, Wisconsin, that I have read the foregoing Verified Complaint for Civil Forfeiture *in rem* and know the contents thereof, and that the factual matters contained in paragraphs 8 through 37 of the Verified Complaint are true to my own knowledge.

The sources of my knowledge and information are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Task Force Officer with DEA.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.


Date:   06/24/2026            *s/ Robert Gregory*
                             Robert Gregory
                             Task Force Officer
                             Drug Enforcement Administration

10